Barbara G. JONES

v.

HONEYWELL INT. INC., F/N/A Allied Signal Specialty Chemicals & XYZ Ins. Co.

No. CIV.A. 01–540–D–M1.

United States District Court, M.D. Louisiana.

Aug. 13, 2003.

Kevin Lovell James, Kevin L. James and Associates, Baton Rouge, LA, for plaintiff.

Gordon A. Pugh, Douglas K. Williams, Anthony Todd Caruso, Breazeale, Sachse & Wilson, Baton Rouge, LA, Steven R. Cupp, Watkins, Ludlam, Winter and Stennis P.A., Gulfport, MS, for defendant.

### RULING & ORDER

BRADY, District Judge.

Pending before the court is a motion for summary judgment filed by defendant, Honeywell International, Inc. ("Honeywell").[1] Plaintiff, Barbara Jones ("Jones"), filed suit against Honeywell under several state theories of recovery for what she essentially claims to be a wrongful termination. Honeywell seeks to have some or all of Jones's claims disposed with in summary fashion. The parties have briefed the matters raised by the complaint and the motion. The court did not require oral argument. Jurisdiction is rightly predicated on 28 U.S.C. § 1332, because the parties are of diverse citizenship and Jones seeks to recover in excess of $75,000, exclusive of costs and interest. For the reasons provided below the court will grant

---

1. Dkt No. 27.

the motion with respect to Jones's claims for breach of the duty of good faith and fair dealing, fraud, and intentional infliction of emotional distress, but will deny the motion with respect to Jones's claims for workers' compensation retaliation and breach of contract. The court will construe the contract claim as a claim under § 301(a), Labor–Management Relations Act, 1947 ("LMRA"), 61 Stat. 156, *as amended,* 29 U.S.C. § 185(a).

## FACTUAL BACKGROUND

At its heart, this dispute concerns Honeywell's right to terminate Jones. Honeywell employed Jones from December of 1976 until it officially terminated her employment on May 24, 2000.[2] Honeywell ended its employment relationship with Jones because she was injured and had not been released to return to work despite having exhausted twenty-six weeks of short-term disability leave time.[3] Jones ceased reporting to work at Honeywell on November 21, 1999 due to an injury that she suffered on the job on May 4, 1998. On that day, Jones stepped off an incline to avoid an oncoming vehicle and broke her left elbow, right wrist, and right ankle.

As an immediate matter, Jones missed only four days—May 5 to May 8, 1998. She then returned to work and attended work regularly until November of 1999. She testified that her ability to work was reduced, that Honeywell put her on light duty, and that for at least some portion of this time she performed essentially no productive function.

It is when Jones determined in November that she needed to revisit her earlier injury that her problems with Honeywell began. On advice of a physician, Jones decided that she should have surgery to repair damage sustained in her fall. On November 15, she applied for short-term disability benefits and FMLA leave time so that she could get that surgery. At some point during her leave, Dr. Scimeca, on behalf of Honeywell, determined that due to the injury Jones could not perform the essential functions of her job. In March, Jones decided to file a claim for workers' compensation and Honeywell received notice of that decision on March 23, 2000. Less than a month later, on April 19, 2000, Honeywell informed Jones that she would be terminated on April 28, 2000, if she was not able to return by that date.

2. There has been some back-and-forth regarding the actual date of Jones's termination. On April 19, 2000, Honeywell informed Jones that it would fire her on April 28, 2000. The company did not get around to filing the separation paperwork until June 3, 2000. That paperwork post-dated the termination to May 24, 2000. Jones received notice that her termination was official on June 4, 2000, when her copy of the separation paperwork reached her hands. Thus there was a period during which Jones's status with Honeywell was less than perfectly clear. At the time, the niceties probably did not seem very important, since Jones was forced to stop working on November 21, 1999 due to an injury. This fact explains how Jones could have been terminated for a week and a half before knowing that she was.

In any event, for purposes of this motion, the court will treat May 24, 2000 (as opposed to June 3, 2000) as Jones's termination date. It will also assume that Jones was in fact notified of her impending termination on April 19, 2000, despite the fact that Honeywell waited nearly a month longer than it had threatened to end her employment. This fact suggests that Jones did not have notice that she was about to be fired; she might, instead, have regarded the April 19 communication as an empty (and unfulfilled) threat. Ultimately, the court does not see a need to resolve this factual question since the only issue to which it is relevant—the alleged prescription of Jones's workers' compensation retaliation claims—should be resolved in Jones's favor regardless.

3. Jones simultaneously exhausted 12 weeks of Family and Medical Leave Act ("FMLA") leave time because those weeks ran concurrently with the short-term disability leave.

At the time it made this revelation, Honeywell knew that Jones had not been cleared to work by her physician and that she was not scheduled to have that determination reviewed until early May.

For some reason, and despite giving Jones notice of her impending termination, Honeywell did not actually fire her until May 24, 2000. It seems likely, though it is by no means clear from the record, that Honeywell believed it could not fire Jones until that date under the operative collective bargaining agreement ("CBA") because it entitled her to more short-term disability leave. Jones was a member of the General Truck Drivers, Warehousemen and Helpers of America, Local Union No. 5, which had negotiated a CBA with the Honeywell Baton Rouge operation.[4] After her termination, Jones applied with Honeywell for a disability pension. On June 30, 2000, Honeywell denied her application and informed her of her right to appeal. Jones did not appeal, but instead grieved under the CBA, claiming that she had been wrongfully terminated. Honeywell denied her grievance. On July 14, Jones and the union appealed the denial. Honeywell refused the appeal on July 30. Jones and the union appealed again. On January 2, 2001, a ruling issued on that appeal. It determined that plaintiff had in fact been wrongfully terminated because the CBA entitled her to twelve months of leave time. Nevertheless, the arbitrator upheld the separation and refused to reinstate Jones because she remained unable to return to work and more than twelve months had passed.

## PROCEDURAL BACKGROUND

On May 24, 2001, Jones filed this suit in state court seeking to recover for wrongful termination under various theories. Primarily she claimed that Honeywell terminated her in retaliation for the fact that she filed a workers' compensation claim. She also claimed a right of recovery for breach of contract, breach of the duty of good faith and fair dealing, fraud, and intentional infliction of emotional distress. Honeywell timely removed this action to federal court. On January 21, 2002, Jones filed an amended complaint. Jones admits that she remains unemployed and totally disabled from returning to work. She began receiving Social Security benefits based on this disability in December of 2001.

Honeywell now seeks, via motion for summary judgment, dismissal of all or some of Jones's claims. Honeywell argues that Jones's retaliation claim has prescribed, that it is preempted by the LMRA, that Jones has not presented any evidence that she was terminated because she filed for workers' compensation, and that it has articulated a legitimate nondiscriminatory reason for the termination that Jones has not rebutted. Honeywell also argues that Jones's remaining state claims should be dismissed as being preempted or without support.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.[5] When the burden at trial rests on the non-moving party the moving party need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case.[6] The moving party may

---

4. Defendant's Exhibit 2.

5. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

6. *Id.*

do this by showing that the evidence is insufficient to prove the existence of one or more elements essential to the non-moving party's case.[7]

Although this Court considers the evidence in the light most favorable to the non-moving party, the non-moving party may not merely rest on allegations set forth in the pleadings. Instead, the non-moving party must show that there is a genuine issue for trial.[8] Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden.[9] If, once the non-moving party has been given the opportunity to raise a genuine factual issue, no reasonable juror could find for the non-moving party, summary judgment will be granted for the moving party.[10]

## ANALYSIS

### I. Workers' Compensation Retaliation Claim

#### A. *Prescription*

 Honeywell seeks to obtain dismissal of Jones's retaliation claim on the ground that it has prescribed. Jones brings her claim under La.Rev.Stat. § 23:1361(B), which is a delictual cause of action and hence subject to a one-year prescriptive period under La. Civ.Code article 3492.[11] The prescriptive period begins to run—that is, the cause of action accrues—when the injured party has actual or constructive knowledge of the facts that would entitle her to bring suit.[12] Honeywell urges that in the context of a wrongful termination action, an employee has actual knowledge of the facts that would entitle her to bring suit when she learns that her employer has decided to terminate her employment. Thus, since Honeywell told Jones on April 19, 2000, that she would be terminated on April 28, 2000, if she did not return to work by that date, Jones knew that Honeywell had decided to terminate her on April 19. Since she did not bring this suit until May 24, 2001, Honeywell argues, her claim is prescribed and the suit must be dismissed.

Most of the authority relied upon by Honeywell interprets federal law and the cases certainly appear to support its position. In *Chardon v. Fernandez,* the Supreme Court held that a plaintiff's cause of action for wrongful termination under 42 U.S.C. § 1983 accrues at the moment that she learns of her employer's decision to terminate, even if the actual termination occurs later.[13] The Supreme Court construed accrual under federal law in *Chardon.* Though state law determines the length of the prescriptive period under § 1983, accrual of a cause of action is a matter of federal law. Quoting its earlier *Delaware State College v. Ricks*[14] decision construing accrual under Title VII and 42 U.S.C. § 1981, the Supreme Court wrote, "the proper focus is on the time of the *discriminatory act,* not the point at which the *consequences* of the act become painful. The fact of termination is not itself an illegal act."[15] Thus as far as these federal

---

**7.** *Id.*

**8.** *Anderson v. Liberty Lobby,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d (1986).

**9.** *Grimes v. Tex. Dep't of Mental Health,* 102 F.3d 137, 139–40 (5th Cir.1996).

**10.** *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *see also,* FED. RULE CIV. P. 56(c).

**11.** *Maquar v. Transit Management of Southeast Louisiana, Inc.,* 593 So.2d 365, 367 (La. 1992).

**12.** *Dixon v. Roque,* 503 So.2d 659, 660 (La. App. 3d Cir.1987).

**13.** *Chardon v. Fernandez,* 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981).

**14.** 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980).

**15.** *Chardon,* 454 U.S. at 8, 102 S.Ct. 28 (emphasis in original) (internal citations omitted).

statutes are concerned, Honeywell has a strong argument that a cause of action accrues when the employee has notice that the employer has made a discriminatory decision, even if it takes the employer a while to carry out that decision.

The Supreme Court based its result in *Chardon*, as it did in *Ricks*, on the view that the illegal discriminatory act and the plaintiffs' injuries occurred before the termination. The Court wrote:

> In *Ricks* the alleged illegal act was racial discrimination in the tenure decision. Here, respondents allege that the decision to terminate was made solely for political reasons, violative of First Amendment rights. There were no other allegations, either in *Ricks* or in these cases, of illegal acts subsequent to the date on which the decisions to terminate were made. As we noted in *Ricks*, "[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination". In the cases at bar, respondents were notified, when they received their letters, that a final decision had been made to terminate their appointments.[16]

The Court concluded that the plaintiffs had suffered an injury at the time that the employers made their final decisions, and that plaintiffs causes of action accrued when they received notice of those decisions. The discharges were, in the view of the court, merely consequences of the independent illicit discriminatory acts

The Fifth Circuit has followed the Supreme Court's reasoning regarding accrual in construing Louisiana statutes that proscribe race and age discrimination. In *Williams v. Conoco, Inc.*, the Fifth Circuit held that "[i]n an action under § 23:1006 for racial discrimination in the discharge of an employee, the one year prescriptive period begins running upon notification that the employee will be discharged."[17] In so holding, the Court of Appeals acted without benefit of any Louisiana state court decision on the issue.[18] Instead, the court based its determination on the fact that Louisiana state courts have long interpreted the state anti-discrimination measure to be identical to the similar federal statute.[19] Since Title VII causes of action for racially discriminatory termination accrue at the moment the employee learns that her employer has decided to terminate her, the court reasoned, the same accrual rule must apply under the Louisiana statute. In *Jay v. International Salt Co.*, the Fifth Circuit relied solely upon its earlier *Williams* decision to apply the same rule to the Louisiana Age Discrimination in Employment Act.[20]

Honeywell now argues that these cases compel the same result in this case, namely entry of summary judgment in its favor on the ground that Jones's claim for retaliation is prescribed. That result is not so forced as Honeywell would have it, however, because in the present setting neither these Fifth Circuit decisions nor the Supreme Court's *Chardon* decision is binding on the court. This is true for different reasons. The Supreme Court's *Chardon* decision concerns accrual under federal law. This case concerns accrual under state law. Thus, the ruling is not strictly on point. The Fifth Circuit's decisions are not binding for two reasons.

---

**16.** *Chardon*, 454 U.S. at 8, 102 S.Ct. 28 (internal citation omitted).

**17.** 860 F.2d 1306, 1308 (5th Cir.1988).

**18.** *Id.* at 1307 ("No cases construing Louisiana law answer this question").

**19.** *Id.*

**20.** 868 F.2d 179, 180–81 (5th Cir.1989).

First, they construed accrual under different statutes than the one at issue here. Second, in a diversity case such as this one, federal courts must follow the substantive jurisprudence of the state's highest court.[21] Where, as here, that court has not addressed the issue of moment, a federal court should determine how it believes the state's highest court would resolve the issue.[22] Decisions of intermediate state appellate courts are not strictly binding, but are nevertheless very important, authorities.[23] If a federal court believes that the state's highest court would decide differently than did lower state courts, it may part ways with such courts, though it should do so only with great caution.[24] "Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."[25] The decisions of the United States Supreme Court and the Fifth Circuit Court of Appeals are merely persuasive authority, while the decisions of intermediate appellate state courts are strongly persuasive of the extant rule of law in Louisiana.

Setting aside, for a moment, the fact that *Williams* and *Jay* construed different state statutes, intervening rulings of state appellate courts have taken up the issue and warrant consideration. The jurisprudence remains essentially in disarray.[26] As far as this court can determine, Louisiana courts have discussed the principle enunciated in the Fifth Circuit decisions in four separate opinions. In 1992, the Third Circuit Court of Appeals noted, in *Winbush v. Normal Life of Louisiana*, that *Williams* "held that the prescriptive period commences to run from the date of notification of the discharge, rather than the date of the discharge."[27] The court applied that rule without analysis, though it was not strictly necessary since the court found that notice and termination occurred simultaneously.[28]

The first time a Louisiana appellate court had need to consider whether to adopt the *Williams* accrual rule it rejected it. In *Harris v. Home Savings and Loan Ass'n*, the Third Circuit stated the question it faced in the following form: "when does the prescriptive period begin to run for a cause of action based on an alleged impermissible termination under the Age Discrimination in Employment Act[?]"[29] The plaintiff in that case received notice that he would be replaced in October, 1992. His employer gave him the choice of taking a lesser position at lesser pay that would last indefinitely or remaining at his present salary for one additional year from December, 1992, to December, 1993. He chose the latter and was terminated on December 31, 1993. Harris filed suit for age discrimination in March of 1994, three months after his termination but one year

---

**21.** *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

**22.** *Lone Star Indus., Inc. v. Redwine,* 757 F.2d 1544, 1548 n. 3 (5th Cir.1985).

**23.** *West v. American Telephone & Telegraph Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940).

**24.** *Id.*

**25.** *Id.*

**26.** *See Nelson v. Shoney's, Inc.,* 1997 WL 567957 at *3 (E.D.La.1997) ("Louisiana law is unsettled as to whether a cause of action accrues on the date of notification of discharge or on the date of termination").

**27.** 599 So.2d 489, 491 (La.App. 3d Cir.1992).

**28.** *Id.*

**29.** 663 So.2d 92, 93 (La.App. 3d Cir.1995).

and five months after he received notice thereof.[30] The court rejected the approach of *Williams* and *Winbush,* stating flatly, "*Winbush* also relied on *Williams v. Conoco* and was erroneously decided." [31]

The court based its decision, in part, on the fact that an employee does not have a viable claim absent damages. The court first noted that employment discrimination causes of action are delictual in nature and thus subject to the one-year prescriptive period imposed by La. Civ.Code. art. 3492. It then pointed out that delictual causes of action have three elements: fault, causation, and damages. Article 3492 specifically provides that the one-year prescriptive period "commences to run from the day injury or damages is sustained." [32] Thus, according to Louisiana law, a plaintiff has no delictual cause of action and prescription does not begin to run until the plaintiff suffers an injury. According to the Third Circuit, Harris did not suffer any injury until he was terminated. The court wrote:

> Mr. Harris did not suffer any damages for his release from employment until he was terminated from his position with Home Savings. Therefore, he did not have a cause of action for his allegedly unlawful termination based on age until that occurrence. [...] Had Mr. Harris filed his lawsuit when he was informed in October, 1992 of his employer's decision to discontinue his employment, an essential element of his claim under Louisiana law, i.e., damages, would have been lacking.[33]

The court found dispositive the fact that an employee could not bring a claim against her employer for wrongful termination before the act of termination as well as the fact that the Code specifically states that prescription begins to run upon injury. It concluded that, under the Louisiana Age Discrimination in Employment Act, an employee's cause of action accrues upon termination, not upon notice of impending termination.

Since the ruling in *Harris,* two other Louisiana Courts of Appeals have weighed in on the issue. In 1997, the First Circuit followed *Harris* without much discussion, stating only that "because Beter did not suffer any damages until the effective date of the layoff, January 2, 1989, he did not have a cause of action for his allegedly unlawful demotion/termination based on age until that occurrence." [34] Finally, in 1998, the Fourth Circuit weighed in and rejected the reasoning of *Harris.*[35] In *King v. Phelps Dunbar,* the Fourth Circuit stated that it agreed with the *Harris* result, but not with its criticism of *Winbush.*[36] In its view, the *Harris* court had no reason to depart from the rule in *Winbush* because "what the plaintiff received was not a specific notice of termination such as occurred in *Winbush* and *Williams,* but a vague and indeterminate notice informing him only that if and when a replacement could be found he would be replaced." [37] Consequently, the Fourth Circuit would have followed the notice rule, but distinguished the facts of *Harris*

---

**30.** *Id.*

**31.** *Id.* at 95.

**32.** La. Civ.Code art. 3492.

**33.** *Harris,* 663 So.2d at 94.

**34.** *Brunett v. Dep't of Wildlife and Fisheries,* 685 So.2d 618, 621 (La.App. 1st Cir.1996) (citing *Harris* ).

**35.** *King v. Phelps Dunbar, L.L.P.,* 716 So.2d 104 (La.App. 4th Cir.1998) *overruled* on this issue, but for different reasons by *King v. Phelps Dunbar, L.L.P.,* 743 So.2d 181 (La. 1999).

**36.** *Id.* at 109.

**37.** *Id.*

from those of *Winbush* and *Williams* so as to obtain the same result. For its failure to do so, the Fourth Circuit characterized the Third Circuit's decision as being based on "faulty reasoning." [38] The court did not at any point address the underpinnings of either rule. It merely criticized the *Harris* court for rejecting a rule whose application it could have avoided.

The reasoning of the Fourth Circuit is now itself suspect. The Supreme Court of Louisiana reversed the Fourth Circuit's *King* opinion.[39] The Supreme Court's decree reads: "For the foregoing reasons, we vacate that portion of the court of appeal judgment affirming the exception of prescription against all defendants." It is not clear, however, how this decree affects how this court should regard the Fourth Circuit's reasoning. For the Supreme Court reversed that court's judgment affirming the exception of prescription on different grounds than those enunciated by the *Harris* court. In fact, the Supreme Court had no call to address the precise issue before this court in its *King* decision. It appears, then, that the Fourth Circuit's argument is just that: an argument whose force lies solely in its persuasiveness.

This court finds that the argument of the Fourth Circuit's *King* opinion is not worthy of following. The reason is that the Fourth Circuit appears to misrepresent the facts of *Harris*. Harris was in fact strong-armed by his employer into accepting a one-year term of employment. It is true that his employer presented him initially with a couple of options. One of these was that Harris could remain in his position until his employer found a replacement and then step down into a lesser (and less well paid) position for an indefinite period. The other option—and the one Harris chose—was to accept termination at the end of one additional year. The agreement ran from December, 1992, to December, 1993 and on the last day of that month Harris was terminated. Far from being a mere "vague and indeterminate notice," Harris essentially worked his last year under an employment contract and knew precisely when his job would end. Thus, Harris knew better than the plaintiffs in *Winbush* and *Williams* that and when his employment would end. It is, accordingly, wrong to suggest—as the Fourth Circuit did—that the Third Circuit should have followed the rule in those cases, but distinguished Harris's claims on the facts. Since this was the only ground upon which that court rejected the *Harris* reasoning, this court will disregard the *King* opinion.

█ The court has before it, then, only four persuasive cases on the question whether a cause of action for wrongful termination in Louisiana accrues at termination or at prior notification of same. Two of those cases—*Williams* and *Winbush*—hold that accrual dates to notice. Two of them—*Harris* and *Brunett*—hold that it dates to termination. It is these resources as well as the Code itself and other established principles of law that the court has available to augur an opinion of the Louisiana Supreme Court that is not yet written. For the reasons given below, the court projects that the Supreme Court would adopt the termination accrual rule enunciated in *Harris*.

█ The court begins, as is proper, with the statutory language. "Interpretation of any statute begins with the language of the statute itself." [40] The court finds that the plain language of the statute

---

38. *Id.*

39. *King v. Phelps Dunbar, L.L.P.*, 743 So.2d 181 (La.1999).

40. *David v. Our Lady of the Lake Hospital, Inc.*, 849 So.2d 38, 2003 WL 21511739, *5 (La.2003).

compels the conclusion that Jones's cause of action accrued only upon her termination. It is established that a wrongful termination claim is delictual and that the one-year prescriptive period applicable to delictual causes of actions applies. Consequently, the relevant statutory language is the following passage from La. Civ.Code article 3492:

> Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damages is sustained.[41]

"Damage is considered to have been sustained, within the meaning of the article, only when it has manifested itself with sufficient certainty to support accrual of a cause of action."[42] And an essential element in a workers' compensation retaliation claim based on a termination, like this one, is the termination itself. La.Rev.Stat. Ann. § 23:1361(B) provides:

> No person shall discharge an employee from employment because of said employee having asserted a claim for benefits under the provisions of this Chapter or under the law of any state or of the United States.

This section makes it clear that an employee, to have a cause of action for retaliatory discharge, must prove that she was discharged.[43] Absent a discharge, the complaint should be dismissed. The claim, being delictual, has three elements: fault, damages, and causation. It is the element of damages that the court is concerned with here. For in the context of a retaliation cause of action, the damage is the discharge. Since the statute provides that the prescriptive period begins to run when the plaintiff sustains damage, it follows in this context that the prescriptive period begins to run upon discharge and not upon prior notice thereof.

■■■ This last conclusion assumes, of course, that the doctrine of *contra non valentem* does not apply. It would apply if the plaintiff did not have notice of her injury or its cause for some period after sustaining it. That observation brings the court to another important point in the argument. The claim that a wrongful termination cause of action accrues upon an employee receiving notice that she will be terminated appears to draw some of its strength from the *contra non valentem* doctrine. For that doctrine states that a cause of action does not accrue during such period as a plaintiff, without fault, does not have notice of her injury. As the Fifth Circuit noted in *Williams*:

> It has long been held that the prescriptive period commences on the date that the injured party has actual or constructive knowledge of the facts that would entitle him to bring suit. But this discovery rule is usually employed to *delay the running of the prescriptive period* until the plaintiff has knowledge of the injury. If the injury under § 23:1006 is the actual discharge, it is unclear under Louisiana law whether knowledge of potential injury starts the prescriptive period running before the date of the actual injury.[44]

---

41. La. Civ.Code art. 3492.

42. *Cole v. Celotex Corp.*, 620 So.2d 1154, 1156 (La.1993).

43. *See also Moore v. McDermott*, 469 So.2d 1207 (La.App. 1 st Cir.1985) ("three elements must be established by the employee: (1) discharge; (2) an assertion of a claim for benefits under the Louisiana Worker's Compensation law or under the law of any state or of the United States; and (3) a causal connection between the discharge and the assertion of a claim for benefits") *overruled on other grounds by Moore v. McDermott*, 494 So.2d 1159 (La.1986).

44. *Williams v. Conoco, Inc.*, 860 F.2d 1306, 1307 n. 1 (5th Cir.1988) (emphasis added).

Despite making this observation, the Fifth Circuit ruled that notice could trigger the prescriptive period before termination. And it did so without discussing the very problem it had raised. That problem is this: *contra non valentem* is an equitable doctrine that is meant to delay accrual of a cause of action when a plaintiff—through no fault of her own—is disabled from acting to advance her legal rights.[45] By dating accrual to notice of intent to terminate, the courts turn *contra non valentem* on its head. What was a shield for plaintiffs to block the harsh effects of prescription becomes, instead, a sword in the hands of employers who wrongfully terminate their employees. That use of the doctrine is inconsistent with the established role of the doctrine in Louisiana courts. As the Louisiana Supreme Court wrote, "*[c]ontra non valentem* has always been a judicially created equitable doctrine applied to ameliorate the harshness which would result from the strict application of prescription in certain situations."[46] This court cannot in good conscience follow the Fifth Circuit in so changing the thrust of the *contra non valentem* doctrine. Insofar as the notice rule gets any of its strength from that doctrine, the court rejects that rationale for adopting or applying it.

Also counseling against the notice rule is the principle that prescription provisions be strictly construed. The Louisiana Supreme Court has repeatedly adverted to that principle in construing La. Civ.Code art. 3492. Indeed, the Supreme Court made reference to this very principle in vacating the Fourth Circuit's prescription ruling in *King*. The Court wrote:

> We have previously held that "prescriptive statutes are to be strictly construed against prescription and in favor of the obligation sought to be extinguished; thus, when there are two possible constructions, that which favors maintaining, as opposed to barring, an action should be adopted."[47]

This court faces the question whether under La. Civ.Code art. 3492 prescription begins running upon notice, but prior to discharge. The statute itself indicates that prescription only begins running once the plaintiff suffers damages. Honeywell and other courts suggest that the damage occurs to the plaintiff when she comes to know that she will be terminated wrongfully. Consequently, the court is faced with two alternative interpretations of article 3492 as it applies to § 23:1361(B). Both parties presumably agree that Jones's cause of action accrued and the prescriptive period began running when she suffered her injury. Their disagreement concerns when her injury "manifested itself

---

45. *Wimberly v. Gatch*, 635 So.2d 206, 210–11 (La.1994) (stating that the doctrine of *contra non valentem agere nulla currit praescripto* ("prescription does not run against a party unable to act") suspends the prescriptive period in four circumstances, including "where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant").

46. *State Through Div. of Admin. v. McInnis Bros. Const.*, 701 So.2d 937, 940 (La.1997).

47. *King v. Phelps Dunbar, L.L.P.*, 743 So.2d at 187–88 (quoting *Bustamento v. Tucker*, 607 So.2d 532, 537 (La.1992)); *see also, David v.*

*Our Lady of the Lake Hospital*, 849 So.2d 38, 2003 WL 21511739 at *5 ("Statutes providing for prescriptive periods are to be strictly construed in favor of maintaining a cause of action"); *Lima v. Schmidt*, 595 So.2d 624, 629 (La.1992); *Foster v. Breaux*, 263 La. 1112, 270 So.2d 526, 529 (1972) ("Under Louisiana jurisprudence, prescriptive statutes are strictly construed, and of two permissible constructions that is adopted which favors maintaining rather than barring the action"); *United Carbon Co. v. Mississippi River Fuel Corp.*, 230 La. 709, 89 So.2d 209, 212 (1956); *Mansur v. Abraham*, 183 La. 633, 164 So. 421, 425 (1935). *Cf. State v. Stewart Bros. Cotton*, 193 La. 16, 190 So. 317, 320 (1939) (holding that prescription is *stricti juris*).

with sufficient certainty to support accrual."[48] Under the plaintiff's version of the statute, her injury manifested itself with sufficient certainty only upon her termination. Under the defendant's version, it manifested itself in the form of notice that she would be terminated. Given that there is a conflict in interpreting these statutory terms and given the clear and repeated direction of the Louisiana Supreme Court that ambiguity should be resolved in favor of the obligation asserted, the court concludes that the prescriptive period begins running in wrongful termination cases only upon termination.[49]

Also of import to this court's determination is the fact that neither court that has ruled to the contrary addresses any of the arguments above. Indeed, the courts decided upon the notice rule in largely conclusory fashion, pointing out that Louisiana courts have construed Louisiana anti-discrimination statutes as having the same scope as similar federal statutes and concluding therefrom that prescription should be treated identically as well. In *Williams,* the Fifth Circuit relied exclusively on this "same scope" argument and prior Supreme Court decisions interpreting federal law. It adverted to a statement of the Louisiana Fourth Circuit Court of Appeals, which stated, "The Louisiana anti-discrimination statute is similar in scope to the federal prohibitions against discrimination embodied in Title VII of the Civil Rights Act of 1964. [...] [W]e will look to the federal statute in determining whether plaintiff has asserted a cause of action for ... discrimination."[50] After observing that under federal law the statute of limitations begins to run on notification, the court concluded that Louisiana courts would follow suit.

The Third Circuit's reasoning in *Winbush* was even more terse. Its entire analysis of the issue follows:

> *Williams* further held that the prescriptive period commences to run from the date of notification of the discharge, rather than the date of the discharge. In his petition, Winbush does not provide us with the date he was notified of his discharge; however, evidence in the record indicates that he was verbally notified of his termination on the same date of his discharge, May 22, 1986. The instant suit was filed on May 21, 1987, within one year of the notification of discharge. We therefore conclude plaintiff's claim under La. R.S. 23:1006 has not prescribed.[51]

It is clear from this passage that the *Winbush* court did not even clearly adopt the Fifth Circuit's position, since under the facts in the record notice and termination were simultaneous. But even assuming that the court did accept the proposition, it offered no argumentation for so doing and certainly does not address the arguments raised in *Harris* and in this opinion. Thus, it is clear that the only reason ad-

---

48. *Cole,* 620 So.2d at 1156.

49. This court has already indicated it believes that the plain meaning of the statute would lead the Louisiana Supreme Court to favor the rule that prescription begins running at termination. There is, therefore, no strict need to advert to the principle of strict construction. As the Louisiana Supreme Court recently wrote, "the rule of strict construction applies only when the plain language of the statute and the rules of interpretation fail to illuminate definitively the legislature's in-

tent." *David,* 849 So.2d 38, 44–45. Nevertheless, since the court's job here is the difficult one of predicting the outcome in the Louisiana Supreme Court, the court believes it advisable to provide alternative grounds for its decision.

50. *Williams,* 860 F.2d at 1307 (quoting *Bennett v. Corroon & Black Corp.,* 517 So.2d 1245, 1246 (La.App. 4th Cir.1987))

51. *Winbush,* 599 So.2d at 491.

vanced in favor of the notice rule concerns the similarity of treatment Louisiana courts have given similar state and federal statutes.

The court does not find this reasoning persuasive. The line of cases establishing similar treatment for state and federal statutes concerns the nature and scope of the rights created by the statutes, not the application of prescriptive periods or statutes of limitations to those causes of action. Even the passage upon which the Fifth Circuit relied makes this distinction clear: "[W]e will look to the federal statute in determining whether plaintiff has asserted a cause of action for ... discrimination." Here the state court is concerned with the question whether a plaintiff has stated a cause of action. The prescription issue presented to the Fifth Circuit concerned not whether the plaintiff had stated a cause of action, but whether the cause of action she asserted had prescribed. All of the authority relied on by the Fifth Circuit construe substantive state statutes by referring to the treatment courts have given the substance of federal statutes. None of them interpret state periods of prescription in the light of federal statutes of limitation.

Nor does the court ultimately find the reasoning of the United States Supreme Court in *Chardon* and *Ricks* persuasive under the facts of this case. As discussed above, the crucial fact, in the view of this court, is that the Jones's injury did not occur until the date of her termination. The Supreme Court held differently in *Chardon* and *Ricks*. The Court held that "the fact of termination is not itself an illegal act, [ ... ] the alleged illegal act was racial discrimination in the tenure decision." [52] This court finds the facts of *Chardon* and *Ricks* to be factually distinguishable from the facts of this case, as

well as most of the other cases discussed herein. The act complained of in *Ricks* was a denial of tenure. The act complained of in *Chardon* was a refusal to enter a new employment contract. In both cases, the plaintiffs awaited an employment determination regarding their future employment. The plaintiff in *Ricks* was under consideration for a tenured position. His employer denied him tenure, but following its policy, offered him an additional one-year employment contract. The plaintiff waited to sue until after his termination. Similarly, in *Chardon,* the plaintiffs were employed on a school-year-to-school-year basis. They were up for renewal of their employment contracts and the Puerto Rico Department of Education informed them that their contracts would not be renewed. What is similar between these two cases is that the plaintiffs already had a termination date built into the terms of their employment, but were under consideration for renewal or promotion. What the plaintiffs in those cases challenged were the employers' decisions not to renew or promote; discharge followed as a matter of course. It is only with that feature of those cases in view that the Supreme Court's insistence that the deleterious employment decision is the "discriminatory act" and the discharge itself is merely "the point at which the *consequences* of the act become painful." [53] The employers in these cases did not decide to discharge the employees; rather, the discharges followed by operation of existing employment arrangements. The discriminatory acts were essentially refusals to rehire or enter new employment contracts.

That is not the situation in this case. Here, Jones was employed indefinitely. Continued employment was presumed and

---

**52.** *Chardon,* 454 U.S. at 8, 102 S.Ct. 28.

**53.** *Id.* (emphasis in original).

no termination date anticipated by the parties or by the terms of Jones's employment. Thus her discharge was not simply a by-product of some independent discriminatory act; the discharge was itself the discriminatory act. The discharge was the injury, not a consequence of the injury. Thus, despite receiving notice, Jones did not suffer her injury until the discharge.

Viewing *Ricks* and *Chardon* in this light suggests broader consequences for prescription in the wrongful termination context. It suggests that these cases have limited applicability, even in the context of federal wrongful termination claims. Specifically, the notice rule there enunciated should be limited to only those cases where a discharge results from the interaction of an existing employment contract or arrangement and an independent discriminatory decision. On this view of these cases, then, Jones's claims would not have prescribed even if she had stated causes of action under Title VII, 42 U.S.C. § 1983, or 42 U.S.C. § 1981.

Confirming the wisdom of rejecting the notice rule is the fact that so many other courts have refused to follow *Chardon* and *Ricks* when interpreting state statutes. In *Romano v. Rockwell Int'l, Inc.*, the California Supreme Court rejected the rule in the strongest terms and held that the statute of limitations applicable to the California Fair Employment and Housing Act begins to run only at discharge.[54]

[W]e question the reasoning of the high court's decisions in this respect. To the extent the civil rights plaintiffs in those cases argued their employers wrongfully had repudiated an obligation imposed by law not to discharge employees on a prohibited ground, on basic contract principles [...] the employees should not be required to bring a lawsuit before discharge.[55]

The Hawai'i Supreme Court refused, in *Ross v. Stouffer Hotel Co.*, to apply the notice rule to the limitations period applicable to Hawai'i's employment discrimination statute.[56] That court wrote: "We construe HRS § 374–4(c) to mean that, in an action in which an employee claims that he or she was discharged in violation of HRS § 378–2(1), the ninety-day filing period commences when the employee is actually discharged."[57] The Supreme Court of New Jersey followed the same course in interpreting the New Jersey Conscientious Employee Protection Act ("CEPA"). It wrote:

[I]n respect of both *Ricks* and *Chardon,* although we are guided by the Supreme Court's analyses of the federal statutes at issue in those cases, we must apply our State jurisprudence in the present circumstance. "Although federal decisional law may serve to guide us in our resolution of New Jersey issues, 'we bear ultimate responsibility for the safe passage of our ship.'" In interpreting CEPA in accordance with its plain language, we are satisfied that the date of discharge represents the appropriate accrual date, not the date on which an employee receives notice of termination.[58]

The Minnesota Supreme Court announced that it would follow the same rule long before any of the contrary decisions issued, stating: "We interpret the occurrence of the practice as set forth in this

---

54. 14 Cal.4th 479, 59 Cal.Rptr.2d 20, 926 P.2d 1114, 1124–27 (1996)

55. *Id.* at 1125.

56. 76 Hawai'i 454, 879 P.2d 1037, 1043 (1994).

57. *Id.*

58. *Alderiso v. Medical Center of Ocean County, Inc.*, 167 N.J. 191, 770 A.2d 275, 281 (2001).

case to mean a discharge or required resignation, the date of which commences the statutory period of limitations." [59]

This court is persuaded by the arguments presented by those courts as well and anticipates that the Louisiana Supreme Court would follow them and reaffirm the Third Circuit's ruling in *Harris* were it faced with the issue squarely today. Consequently the court will apply the termination rule rather than the notice rule. The earliest that Honeywell terminated Jones was May 24, 2000. She filed this lawsuit on May 24, 2001. As a result, her cause of action has not prescribed.

### B. Preemption by the LMRA

Honeywell also seeks summary judgment on the workers' compensation retaliation claim based on the argument that her claim is preempted by the Labor–Management Relations Act ("LMRA") § 301. That section provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties.[60]

Honeywell argues that Jones is required to bring her retaliatory discharge claim, if at all, as a claim under this section. It argues that interpretation of the collective bargaining agreement is inextricably intertwined with Jones's retaliatory discharge cause of action—that this claim cannot be resolved without interpreting the terms of the contract. Any such claims, it argues, are preempted by the LMRA.

Honeywell's argument is without merit. In *Lingle v. Norge Div. of Magic Chef, Inc.*, the Supreme Court held that section 301 preempts an application of state law "only if such application requires the interpretation of a collective-bargaining agreement." [61] The Court also has held that section 301 does not preempt "state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." [62] The Fifth Circuit has construed this language to mean that section 301 preempts a state cause of action when resolution of the state action is "*substantially* dependent upon analysis of the terms of the collective bargaining agreement." [63] To be preempted the state claim must be "inextricably intertwined" with the CBA.[64] And it is permissible for a party to use a CBA to support the credibility of its claims.[65]

These authorities make it clear that Jones's retaliation claim is not preempted. The question central to resolution of that dispute is whether Honeywell's decision to terminate Jones was determined by its desire to retaliate against her for submitting a workers' compensation claim. It does not matter, as Honeywell asserts, that it was entitled to terminate her under the terms of the CBA, for the plaintiff need not show that retaliation is the only possible reason for the termination.[66] The only question that may come up with respect to the CBA is whether

---

59. *Richardson v. School Bd. of I.S.D. No. 271,* 297 Minn. 91, 210 N.W.2d 911, 916 (1973).

60. 29 U.S.C. § 185(a).

61. 486 U.S. 399, 413, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988).

62. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 219, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985).

63. *Wells v. General Motors Corp.,* 881 F.2d 166, 173 (5th Cir.1989) (emphasis in original).

64. *Id.* at 175 n. 20.

65. *Id.*

66. *See Ducote v. J.A. Jones Const. Co.,* 471 So.2d 704, 707 (La.1985).

there is evidence that Honeywell did not believe that it was entitled to fire Jones when it did. When Jones pursued her grievance under the CBA, she ultimately prevailed on the claim that she should not have been terminated when she was. Her claim during that proceeding was that she was entitled under the CBA to twelve months of leave before termination. The arbitrator determined that she was right on this point, but refused to reinstate Jones because, by the time he reached the decision, twelve months had passed and Jones still could not return to work. Hence, the court has as evidence an arbitrator's determination that, under the CBA, Honeywell was not within its rights when it terminated Jones. That evidence raises the question whether Honeywell's purported reason for terminating Jones was mere pretext. The Fifth Circuit has held that "either party may use a CBA to support the credibility of its claims." [67] The court sees no reason why this principle should not extend to adjudications by arbitrators regarding the terms of a CBA.[68] Consequently, Jones's workers' compensation claim is not preempted.

### C. The Substance of the Retaliation Claim

██ Jones's primary claim is that Honeywell fired her because it learned that she sought to file a claim for workers' compensation. Such conduct is proscribed by La.Rev.Stat. § 23:1361(B), which provides:

No person shall discharge an employee from employment because of said employee having asserted a claim for benefits under the provisions of this Chapter or under the law of any state or of the Unite States. Nothing in this Chapter shall prohibit an employer from discharging an employee who because of injury can no longer perform the duties of his employment.

Thus Jones has the burden of proving (1) that she filed a workers' compensation claim, (2) that Honeywell terminated her employment, and (3) that Honeywell fired her because she filed the compensation claim.

Honeywell seeks to have this claim dismissed on the basis that Jones has not presented sufficient evidence of the causal connection between her claim and her discharge. Honeywell does not contest that Jones asserted a workers' compensation claim or that it discharged her. Nor does it contest that it learned of Jones' claim in March, 2000. It simply claims that Jones has not carried her burden of providing evidence of the connection between the discharge and her compensation claim. It also claims that it had a legitimate reason for terminating her, namely that she could not return to work and they could not any longer afford to keep her position open.

After reviewing the facts of the case, the court is of the opinion that Jones has presented sufficient evidence on the connection between her claim and her discharge to survive summary judgment. There is evidence in the record that Jones began the process of filing her workers' compensation claim in March, 2000. Honeywell admits that it notified Jones of her impending termination less than a month later. These events are so close in

---

67. *Id.; see also Wells*, 881 F.2d at 175 n. 20.

68. In fact, the court may be able to treat the issues as closed as between the two parties, since it is evident that the arbitrator ruled that Honeywell was not within its rights under the CBA to terminate Jones at the time that it did so. If neither party can appeal the arbitrator's opinion under the LMRA, then it might be proper to treat it as a final judgment with preclusive effect. The court does not decide that issue at present because it is unnecessary to dispose of this motion and the parties have not developed it in their briefs.

time as to raise the inference that the claim motivated the termination. On its own, the court does not believe the inference would be strong enough. But that evidence does not stand alone. It is uncontested that Honeywell employed Jones in a reduced capacity for more than a year after her accident. At least some of that time Jones indicates that she really did not perform any work at all. Nevertheless, Honeywell did not terminate Jones and did not encourage her to take the medical leave to which she was entitled so that it could rightly begin the process of replacing her. Only after Jones filed a workers' compensation claim did Honeywell decide that they time had come to discharge Jones. Thus, the inference that Honeywell retaliated is strengthened.

There is also evidence that Honeywell jumped the gun in terminating Jones. First, Honeywell informed Jones on April 19, 2000, that she would be discharged if she did not return to work by April 28, 2000. Despite so asserting, Honeywell did not in fact terminate Jones until May 24, 2000. It is not perfectly clear why Honeywell delayed. There is, however, evidence in the record that Jones was entitled to twenty-six weeks of paid sick leave under the terms of the CBA. She began taking that leave time on November 23, 1999. It appears, then, that Honeywell could not have terminated Jones until late May, 2000. That Honeywell was over-eager to end the employment relationship is circumstantial evidence that the termination decision was motivated by Jones's decision to file a workers' compensation claim. Similarly relevant is the fact that an arbitrator determined that Jones' termination was too early under the terms of the CBA.

Also weighing in favor of Jones's version is the fact that Honeywell knew Jones could not return to work on April 28 when it imposed that condition on her continued employment. In it's letter to Jones of April 19, Elle Jefferis, Honeywell's Louisiana area Human Resources Leader wrote the following:

> Your physician's statement, which you brought in today, states you will not be permitted to return [to] work through 5/10/00. At that time, you have another doctor's appointment to further assess your physical condition. Given your present condition and your doctor's continuing certification of you inability to return to work, it is indefinite when you may be released to return to work. At present, business needs dictate that we move forward and back fill your position. If your physician will release you to return to work by 4/28/2000, please notify us and we will hold your position until that time.[69]

Not only did Honeywell know that Jones was not cleared to work by April 28, it also knew that she was due to be re-evaluated less than two weeks after that date. It is not clear why these two weeks should be so crucial to Honeywell's business after it had accommodated Jones for so long. Jones's explanation fills the gap. Honeywell's enthusiasm is even more peculiar in light of the fact that it was not, in fact, entitled to terminate Jones at that time, and had to wait until May 24 to bring its plan to fruition in any event. All of this circumstantial evidence, taken together, supplies a rational jury with adequate evidence from which to conclude that Honeywell discharged Jones because she filed a workers' compensation claim. Accordingly, Honeywell's motion for summary judgment on Jones's workers' compensation retaliation claim will be denied.

**II. Claim to Pension Entitlement**

■ Honeywell argues that Jones seeks to overturn its denial of pension

---

**69.** Defendant's Exhibit 10.

benefits under a plan governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* If she makes such a claim, Honeywell urges, this court must dismiss it because she admits that she failed to exhaust available and required administrative remedies. The court has reviewed Jones's state Petition for Damages [70] and her First Amended Complaint.[71] Even taking the admonition of Federal Rule of Civil Procedure 8(f) [72] into account, the court does not find that Jones has asserted a claim for those benefits. Accordingly, the court refuses to adjudicate that claim at present. In the event that the claim is viable, Jones may seek to amend her complaint yet again, and the court will be inclined to allow such a request, as is required by Federal Rule of Civil Procedure 15(a).[73]

## III. Remaining State Law Claims

### A. Breach of Contract

 Honeywell argues that Jones's claim for breach of contract must be dismissed because it is preempted by § 301(a), Labor–Management Relations Act, 1947 ("LMRA"), 61 Stat. 156, *as amended,* 29 U.S.C. § 185(a). Honeywell is correct that contract-based claims that would require the interpretation of a collective bargaining agreement are preempted by the LMRA.[74] It is incorrect, however, in urging dismissal of the claim as the only available remedy. As the Fifth Circuit has stated:

When the resolution of a state law claim substantially depends on the meaning of a collective bargaining agreement, *courts must treat the claim as one made under section 301 or dismiss it as preempted by federal labor law.*[75]

The direction from the Fifth Circuit is disjunctive. Because Honeywell has provided the court with no other reason to dismiss Jones's contract claim, the court will construe it as a claim under the LMRA seeking relief for violation of the operative CBA. Accordingly, the motion to dismiss Jones's claim in contract is denied.

### B. Breach of the Implied Duty of Good Faith

 Jones also claims that Honeywell breached its duty of good faith and fair dealing. Honeywell argues that this claim too must be dismissed. The basis for Jones's breach of good faith claim is not any obligation arising out of the CBA between her union and Honeywell. Instead, she alleges that Honeywell "breached its implied covenant of good faith an fair dealing by failing to inform plaintiff of her right to file a workers' compensation claim, misleading and inducing the plaintiff to pursue compensation through the utilization of FMLA and disability benefits instead of workers compensation benefits." [76] Jones is unable to locate the obligation Honeywell violated in anything but La. Civil Code art.1983, which provides:

Contracts have the effect of law for the parties and may be dissolved only

---

70. Dkt No. 1.

71. Dkt No. 19.

72. "All pleadings shall be so construed as to do substantial justice." Fed. R. Civ. Pro. 8(f).

73. "A party may amend the party's pleading once as a matter of course. [. . .] Otherwise a party may amend the party's pleading only by leave of court or by written consent of the

adverse party; and leave shall be freely given when justice so requires." Fed R. Civ. Pro. 15(a).

74. *Branson v. Greyhound Lines, Inc.,* 126 F.3d 747, 753 (5th Cir.1997).

75. *Id.* (emphasis added).

76. Plaintiff's First Amended Complaint ¶ 4, Dkt No. 19.

through the consent of the parties or on grounds provided by law. Contracts must be performed in good faith.[77] Unfortunately for her claim, the implied duty of good faith—as is clear from the statute—arises only in the context of performance of a contract.[78] Since Jones alleges a general obligation unrelated to any contractual duty, she has not properly stated a cause of action. Consequently, the court will dismiss Jones's claim against Honeywell for breach of the implied duty of good faith and fair dealing.

### C. Fraud

■ Jones also claims Honeywell committed fraud against her. Honeywell seeks summary dismissal of this claim as well. In Louisiana, the cause of action for fraud is provided in La. Civil Code article 1953, which states:

> Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction.[79]

The alleged factual predicate of this claim is essentially the same as for the breach of the implied duty of good faith and fair dealing claim. The only mention of fraudulent and misleading behavior in Jones's first amended complaint (there is no mention of fraud in her original state petition) follows the language from paragraph four of the complaint regarding workers' compensation and FMLA benefits. Immediately after the language quoted above, the complaint states that "Plaintiff further avers that this matter was fraudulent and misleading to her as a valued employee of the company."[80] Thus Jones essentially

claims that article 1953 provides the obligation that the duty of good faith could not. If Honeywell encouraged Jones to accept FMLA leave rather than file a workers' compensation claim with the intent to obtain an unjust advantage or to cause Jones a loss in benefits, then its actions may have been fraudulent. The question before the court is whether Jones has presented evidence sufficient to create a genuine issue of fact material as to each element.

Jones has presented no evidence to support the claim that Honeywell intended to gain a benefit or to inconvenience her by omitting to inform her that she could file a workers' compensation claim. Jones suffered serious injuries in a work-related accident on May 4, 1998. She missed essentially no time from work, despite her injuries. Instead, she returned to work full time in a light duty position until November of 1999. Honeywell paid her full salary during this period and also, by Jones's own admission, paid all her medical expenses. It is also uncontested that Honeywell did not inform Jones that she could have filed a workers' compensation claim at that time. But Jones nowhere identifies the advantage Honeywell gained or the inconvenience she suffered due to the omission. The only evidence is that Honeywell continued to pay Jones's salary and medical expenses during her period of difficulty. Honeywell acted properly in this respect. If it gained anything by its omission, plaintiff has not informed the court what that might be.

Jones also seeks to base her fraud claim on the fact that Honeywell induced her to exercise her rights under the FMLA rather than the workers' compensation statute.

---

77. LA. C.C. art.1983.

78. *Adams v. Autozoners, Inc.,* 1999 WL 744039, *7 (E.D.La.1999).

79. LA. C.C. art.1953.

80. Plaintiff's First Amended Complaint ¶ 4, Dkt No. 19.

Again, there is no evidence to support the claim that Honeywell gained or that Jones suffered from that omission. In November of 1999, Jones had decided to have surgery to correct the problems arising from her accident. She applied for paid sick leave provided for under the CBA. Honeywell informed her that she needed to file for FMLA leave at the same time and she did so. Jones now informs that she believed she would be entitled the statutorily prescribed twelve weeks of FMLA leave after her twenty six weeks of paid sick leave expired. In this belief she was mistaken, since employers may require that FMLA leave run concurrently with leave they provide for independently.[81] But this confusion is irrelevant to the fraud claim. The fraud claim is predicated on the allegation that Honeywell induced Jones to use her leave time rather than file a workers' compensation claim. Even assuming that Honeywell omitted to inform Jones of her workers' compensation rights, Jones cannot sustain a claim of fraud because she does not even explain—never mind present evidence regarding—how Honeywell benefitted from paying her sick leave for twenty six weeks. There being no evidence on an element of the fraud claim, the court will grant the motion for summary judgment on that claim.[82]

### D. Intentional Infliction of Emotional Distress

■■■ Jones also claims that Honeywell is liable to her for committing the tort of intentional infliction of emotional distress ("IIED"). The court has reviewed the briefs and exhibits submitted by the parties and finds that Jones has not alleged conduct on the part of Honeywell that was sufficiently egregious to sustain that claim. Under Louisiana law,

> [T]o recover for intentional infliction of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from [her] conduct.[83]

To be actionable, the defendant's conduct must be so outrageous as to be beyond the pale from the standpoint of civilized citizens.[84] Because employees and employers occupy vastly different relative positions of power, employer conduct in the workplace need not be as severe to be considered extreme and outrageous as it would outside the workplace.[85]

■■■ Applying these principles to the facts of this case, the court must conclude that Jones has not supported her IIED claim. Because all other claims have been dismissed, Jones's IIED claim rests only on the factual predicate of the retaliation claim and claim breach of contract claim (under the guise of an LMRA claim). Even if true, Jones's allegations with respect to those claims do not demonstrate severe and outrageous conduct. Jones alleges that Honeywell fired her shortly af-

81. *See* 29 C.F.R. § 825.208(c) (allowing employers to require that employer-sponsored paid leave be substituted for unpaid FMLA leave).

82. Summary judgment is also proper because Jones admits that Honeywell informed her of the ability to file a workers' compensation claim. In her deposition, Jones states that on the application for sick pay benefits she answered affirmatively the question "Have you or will you file for worker's compensation benefits?"

83. *White v. Monsanto Co.,* 585 So.2d 1205, 1209 (La.1991).

84. *Id.*

85. *Id.* at 1210.

**674**

ter learning that she intended to file a workers' compensation claim. Under her version of the facts, Honeywell acted maliciously toward her based on its displeasure that she would file such a claim. She also claims that they violated the terms of the operative CBA when they fired her. In *Stewart v. Parish of Jefferson*, the court of appeals held that the plaintiff had not shown that his employer acted in an extreme and outrageous fashion, though his supervisor harassed him for two years, questioned his personal life, increased his workload, and pressured him to accept a demotion which ultimately led to his termination.[86] If a Louisiana court refused to find that the employer in *Stewart* case acted outrageously, this court cannot sustain an IIED claim in this one. Accordingly, Honeywell's motion for summary judgment on Jones's IIED claim will be granted.

### CONCLUSION

Accordingly, for the reasons assigned above, Honeywell's motion for summary judgment (Dkt No. 27) is **GRANTED** with respect to Jones's claims for breach of the duty of good faith and fair dealing, fraud, and intentional infliction of emotional distress. The same motion, however, is **DENIED** with respect to Jones's claims for workers' compensation retaliation and breach of contract, which the court will construe as a claim under 29 U.S.C. § 185(a).

---

**86.** 668 So.2d 1292 (La.App. 5th Cir.1996), *writ denied,* 671 So.2d 340 (La.1996).